ALFRED SHRIMPTON AND SONS, Limited,

*vs.*

WILLIAM W. PENDEXTER.

Sagadahoc.     Opinion March 2, 1896.

*Practice. Exceptions. Presiding Justice. Findings of Fact.*

It is a firmly established principle that the decision of a presiding justice as to matters of fact, in cases referred to him with the right of exceptions, is conclusive; and in such case exceptions to the law court do not lie to his findings of any matters of fact.

*Pettengill* v. *Shoenbar*, 84 Maine, 104, affirmed.

ON EXCEPTIONS.

This was an action of assumpsit on account annexed to recover $110.88 for goods sold and delivered. The case was referred to the court with the right to except. Judgment being rendered in favor of the plaintiff, the defendant filed exceptions.

It appeared from the testimony that on November 18th, 1893, the plaintiff received by mail from the defendant, an order signed by the defendant under the name of H. E. Palmer & Co., for two great gross cards of Kantopen hooks and eyes, the cards to have printed thereon the name, address and advertisement of the defendant, as directed by him in the order. The goods were to be prepared and then shipped to the defendant, under the name of H. E. Palmer & Co., by the cheapest way.

The order was partly in printed form and partly written, was signed by the defendant under the name of H. E. Palmer & Co. and was received by the plaintiff, as stated, on November 18th, 1893, through the mail.

This order is as follows :

"Date, Nov. 16, 1893.

" Alfred Shrimpton & Sons, Ltd.,
273 Church street, New York City.

"Please put up for us as soon as possible two great gross cards of your Kantopen hooks and eyes, assorted in the following sizes and colors : one each three-fourths black.

" One-half of the order in number four.

" One-half of the order in number three.

" One-sixth of the order in number two.

" In each of the above sizes give me three-quarter black and one-quarter white.

" You may change this assortment to suit yourself.

" Print my advertisement on the centre of each card, as written in the space below :

H. E. Palmer & Co.,
Dealers in
Dry Goods and Small Wares,
26 Centre Street, Bath, Maine.
Terms, net thirty days, one per cent ten days.

"When ready, ship by the cheapest way to :
(Signature of firm) H. E. Palmer & Co.

Town, Bath, State of Maine."

The plaintiff thereupon wrote the defendant as follows :

"New York, Nov. 20th, 1893.

" H. E. Palmer & Co.,
Bath, Me.

" Gentlemen :

"We are in receipt of your esteemed order for two great gross cards of Kantopen hooks and eyes, to be put up as soon as we can prepare the goods with your name and special advertising matter printed thereon.   We read the advertisement as follows :

H. E. Palmer & Co.,

Dealers in

Dry Goods and Small Wares,

26 Centre Street, Bath, Maine.

"Please check this all over carefully, making any changes or corrections you desire, and if O. K. sign and return to us by first mail, in the enclosed stamped envelope, and we will proceed with the order. It usually requires from thirty to sixty days to get out this class of goods, but we will hurry the order, and ship at the earliest possible date. Thanking you for the favor, we are,

Yours respectfully,

Alfred Shrimpton & Sons, Ltd."

"We have checked this all over carefully, and find it correct in every particular, H. E. Palmer & Co."

"Date, Nov. 22, 1893."

The president of the plaintiff corporation testified :

"Ques. What was then done by the plaintiff in regard to the defendant's orders? Ans. When the confirmation letter was signed and returned to the plaintiff, I at once gave instructions to have the special advertising matter and the goods ordered by the defendant on the order prepared ; each one of the cards to be printed with the name, address and advertisement as directed on the order."

"Ques. Are these goods put up and prepared according to order only? Ans. Yes, sir, they are put up specially and by order only, and for that reason, the letter was sent to the defendant to have the order confirmed, as the cards, when once printed with the name, address and advertisement of the merchant ordering them, are by reason of the printed matter thereon, rendered unsalable to any other merchant, and the goods become worthless and cannot be disposed of. For this reason the letter was sent to the defendant to apprise him of the goods, and the amount he had ordered, with a request for him to confirm it before we proceeded with the order. As I have said, he confirmed the order, — signing the confirmation letter, and returning it by mail to us."

" Ques. Did you see the goods after they were prepared, and before they were shipped to the defendant? Ans. Yes, sir, I did. On December 14th, 1893, the goods were all prepared and ready for shipment. I examined them carefully as is my custom with all goods prepared specially, by order such as these were, and found that the advertising matter had been printed exactly as the defendant had ordered the same to be done, and that the goods had been prepared in every particular, according to the order and as confirmed by him in the confirmation letter. Each and every card containing the hooks and eyes, had the defendant's advertisement printed on it as follows : ' H. E. Palmer & Co., Dealers in Dry Goods and Small Wares, 26 Centre Street, Bath, Maine,' and the goods in all respects, were exactly according to order. On December 14th, 1893, I caused the goods to be shipped to the address given upon the order, Bath, Maine, addressed to the defendant under the name of H. E. Palmer & Co.

" Ques. Then the goods ordered by the defendant, two great gross cards of Kantopen hooks and eyes, were prepared and shipped to him as per contract? Ans. Yes, sir, they were."

" Ques. Has any portion of the said goods ever been received or accepted back by the plaintiff or by any one in its behalf? Ans. No, sir."

The plaintiff wrote the defendant as follows :

"New York, Jan. 22nd, 1894.

" H. E. Palmer & Co.,

Bath Maine.

" Gentlemen :

" We received yours of January 16th, enclosing check $10.08, which *you say*, (is to settle for amount of goods kept out of our bill of December 14th, 1893). Our bill was an entire one, and not to be paid for piecemeal. We have not received any goods from you. We have placed the amount to your credit, and we enclose you herewith a statement for the balance due to us. This amount is now past due, and unless we receive your remittance to balance, by return of mail, we shall place the matter in the hands of our attorney for collection.

Yours respectfully,

Alfred Shrimpton & Sons, Ltd."

The defendant testified : . . .

"Ques. You signed the order; is that like the order you signed? Ans. I should say that was the order. That wasn't what we received at first. We made that out to show what we wanted for printing. That was a blank.

"Ques. State if you can consecutively and concisely just what you did after you received that first circular? Ans. I received the sample of hooks and eyes and examined them carefully, and thought we could use some of them. The price of the hook and eye according to their circular was three and a half cents a card. I think I figured them up. That is something we never do, buy a hook and eye by the card. I never heard of their being sold by the card ; they are always sold by the gross. They came to $2.52 a gross, the way we always buy them. I ordered one gross each."

"Mr. Trott : Was the order in writing? Ans. Yes, sir."

"Mr. Trott. I object to his stating the contents."

"Ques. Did you order two great gross? Ans. I did not order in great gross cards."

"The court : The order as read was two great gross? Ans. Yes, sir."

"The court : Do you say that that wasn't the order, do you say that it was two gross or two great gross? Ans. I couldn't say how it was written, whether we wrote it one gross or one great gross. We meant a great gross, but sometimes we don't always put the "great" on. But what I ordered and intended was a great gross of each size."

"Ques. You are talking about a great gross of hooks and eyes? Ans. Yes, sir, that is what I am talking about."

"Ques. ·When you made your order, what did you understand you were ordering? ` (Objected to.)"

"The court. Here is a written order which speaks for itself.

"Ques. When you signed an order for two great gross of Kantopen hooks and eyes, what did you understand you were signing? (Objected to.)"

"The court. You understood what was meant by gross, and what by great gross perfectly? Ans. Yes."

"The court. I understand that you received a sample card like this that they sent you? Ans. Yes, sir, a sample card the same as that."

"Ques. So you knew that they put them up on a card; are they always put up on a card? Ans. Yes, sir. There is a very large hook and eye that is put up loose in a box, but not on a card." . . .

"Ques. After you had received these goods, what did you do? Ans. I opened a case and examined them, and I was perfectly astonished to see the quantities of hooks and eyes there. I didn't know what it meant. And I took out what I ordered, nailed up the case, and returned them to the firm that they came from, and sent them a check for what I ordered." . . .

"Ques. Did you ever hear of anybody selling or anybody buying, for the thirty years that you have been in trade, hooks and eyes by the gross cards or by the great gross cards? Ans. No, sir, nor no one else. They never were sold that way before." . . .

Cross-Examination.

"Ques. On November 13th, didn't you write to Alfred Shrimpton & Sons something like this : 'Please send me one gross each of Kantopen hooks and eyes like sample sent with advertisement on the cards, and oblige H. E. Palmer & Co. Print the ad. as follows : H. E. Palmer & Co., dealers in dry goods and small wares?' Ans. Yes, sir."

"Ques. Didn't you on the 15th receive a reply to that from the plaintiff? Ans. Yes, sir, with this printed matter." . . .

"Ques. Didn't they write in reply, 'Yours of November 13, to hand, and in reply will say, we could not print your order one dozen cards, nor do we think you meant it so; we enclose you an order blank, which please fill it out as wanted, and write the advertising matter very plainly, and we will proceed with the order?' Ans. Yes, sir. I didn't order one dozen cards."

"Ques. You received that and with it came this blank order? Ans. Yes."

"Ques.   You filled out the blank order?   Ans.   I filled out the blank order the same as I did in the first place."

"Ques.   As shown here in the deposition read?   Ans.   Yes."

"Ques.   And signed it and sent it?   Ans.   You see what they say; I didn't order a dozen cards."

"Ques.   They called your attention particularly to the fact that one gross of three and four Kantopen hooks and eyes would simply be a dozen cards in their reply, and sent you a blank order for you to fill out, and you filled it out and sent it to them?   Ans.   No, sir, one gross of hooks and eyes isn't a dozen cards."

"Ques.   My point is that your attention was directly called to how much you had ordered?   Ans.   My attention wasn't called at all to it."

"Ques.   Was that not the reply to your letter of the 13th?   Ans.   That is the reply to the letter, but you construe it different."

"Ques.   That is the language they used?   Ans.   As far as I recollect, yes."

*Joseph M. Trott*, for plaintiff.

*C. W. Larrabee*, for defendant.

Plaintiff lacked the clear and expressive words, such as both parties understood, necessary to form a legal contract. 1 Comyn on Contracts, p. 2.   The assent of both contending parties to the unmistakable meaning of this contract, is wanting in this case, and unless it was so, there was never a contract binding on the defendant.

The construction of the contract in writing, and verbal testimony belongs to the court, to give to the writings or letters, such meaning taken in connection with the evidence, as shall seem consistent with the requirements of law.   Am. & Eng. Ency. Contract, 42 ; Construction.

SITTING : PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, JJ.

, FOSTER, J.   Assumpsit on an account annexed for goods sold and delivered.

The case was heard by the presiding justice with right of exceptions.

Judgment being for the full amount sued for, the defendant excepts, " because the judge erred in his construction and interpretation of the evidence."

The exceptions challenge the correctness of the decision of the presiding justice based upon the result of evidence and matters of fact.

The principle is too familiar and too firmly established to need the citation of authorities, that the decision of a presiding judge as to matters of fact, in a case referred to him with right of exceptions, is conclusive. *Pettengill* v. *Shoenbar*, 84 Maine, 104; *Berry* v. *Johnson*, 53 Maine, 401; *McCarthy* v. *Mansfield*, 56 Maine, 538; *Haskell* v. *Hervey*, 74 Maine, 192, as to the effect of testimony; *Edmundson* v. *Bric*, 136 Mass. 189; *Coolidge* v. *Smith*, 129 Mass. 554, 557. And in such case exceptions do not lie to his finding of any matter of fact. *Curtis* v. *Downes*, 56 Maine, 24.

*Exceptions overruled.*